GOETZ *et al.* v. FLANDERS *et al., Appellants.*

### Division One, November 27, 1893.

1. **Equity**: FRAUD: DEED. Where a grantee in an absolute convey-ance by fraud and deception induced the grantor to believe it to be a deed of trust to secure a loan and caused him to sign it under that impression, equity will set it aside.

2. ———: ———: ———. The evidence in this case *held* sufficient to establish the fraud charged.

*Appeal from Jackson Circuit Court.*—HON. R. H. FIELD, Judge.

AFFIRMED.

*K. McC. DeWeese* and *S. Foster* for appellants.

(1) Fraud must be affirmatively proved as alleged. 1 Beach on Modern Equity Jurisprudence, p. 72, sec. 71; *Ryan v. Hitchcock*, 43 Mo. 527; *Marksbury v. Taylor*, 10 Bush, 519. It cannot be left wholly to inference or even principally to conjecture. (2) The wrongful acts charged against Flanders, if true, posi-tively amount to a crime. Therefore, the presumption of innocence prevailed with as much force as if this were a trial upon an indictment. *Gutzweiler v. Lack-mann*, 39 Mo. 91; *Herring v. Richards*, 1 McCreary, 574; *Fleming v. Slocusm*, 18 Johns. (N. Y.) 403; *Jackson v. King*, 4 Cowen (N. Y.) 220; *Starr v. Peck*, 1 Hill (N. Y.) 270; Wait on Fraudulent Conveyances, sec. 5. (3) No evidence of Sleek's deceit was compe-tent as against Flanders until the unlawful confedera-tion between them had been proven. Bigelow on Fraud, pp. 483, 484, and cases cited. (4) There is no evidence to justify a suspicion or even probability of

any complicity on the part of Flanders in any of the alleged wrongful acts of Sleek, or any knowledge of them. (5) There is no adequate foundation for the judgment in this case. *Bryan v. Hitchcock*, 43 Mo. 527; *Jackson v. Wood*, 88 Mo. 76. (6) The evidence must, in fact, be so clear, definite and positive as to leave no room, or reasonable ground, for doubt in the mind of the court. *Forrester v. Scovill*, 51 Mo. 268; *Johnson v. Quarles*, 46 Mo. 423, and cases cited. (7) Fraud in the inception of a contract does not render it void, but only voidable, at the option of the defrauded person. *Cobb v. Hatfield*, 47 N. Y. 533; Beach on Modern Equity Jurisprudence, p. 85, sec. 82, and cases cited.

*L. G. Rowell* and *E. J. McWain* for respondents.

(1) The existing and well recognized rule of this court, in reviewing chancery cases, is to defer to the findings and judgments of the trial court, who has had the opportunity of confronting the parties and witnesses and observing their demeanor; and unless appellant can show from the record a want of any testimony to sustain the finding, or the existence of a fair preponderance against it, in cases of conflict of evidence, the finding and judgment of the lower court will not be disturbed. *Mellier v. Bartlett*, 106 Mo. 381; *Drosten v. Mueller*, 103 Mo. 624; *Rawlins v. Rawlins*, 102 Mo. 563; *Bohannon v. Combs*, 97 Mo. 446. (2) The acknowledged rule of this court requires less directness of proof in the establishment of a charge of fraud in equity than at law. In the former, it may be inferred from the facts and circumstances of the transaction. *King v. Moon*, 42 Mo. 555; *Massey v. Young*, 73 Mo. 273; Story's Equity, sec. 190; Cooley on Torts, 475; 3 Greenleaf's Evidence, sec. 254. (3)

The proof of fraud need not be direct and positive, but may be inferred from the surrounding circumstances. *Massey v. Young*, 73 Mo. 273; *Frederick v. Allgaier*, 88 Mo. 598; *Burgert v. Borchert*, 59 Mo. 83; *Hopkins v. Seivert*, 58 Mo. 201; *King v. Moon*, 42 Mo. 555; Cooley on Torts, 475; Story's Equity, sec. 190; Kerr on Fraud and Mistake, 384; *Rinckle v. Nichols*, 7 Mo. App. 591; *State ex rel. v. Estel*, 6 Mo. App. 6; *Groschke v. Bardenheimer*, 15 Mo. App. 353; *Chandler v. Fleeman*, 50 Mo. 240. (4) A warranty deed induced to be signed by fraud and deception, under the misapprehensive belief, of executing a deed of trust, is utterly void and totally destitute of validity, and can be avoided without any formal act of rescission and restitution. *Turner v. Turner*, 44 Mo. 539; *Stumpf v. Stumpf*, 7 Mo. App. 276; *Lœffel v. Pohlman*, 47 Mo. App. 586.

BLACK, P. J.—The plaintiffs, husband and wife, brought this suit against F. L. Flanders and Henry Sleek to set aside a deed from the plaintiffs to Flanders. The deed bears date the twenty-third of April, 1890, and conveys a lot with two houses thereon in the City of Kansas. The relief is asked on the ground that the plaintiffs supposed they executed a deed of trust in the nature of a mortgage, but by the fraud of the defendants were induced to execute a deed absolute in form. The suit was dismissed as to Sleek; decree for plaintiffs.

The plaintiffs are German people, unable to read or write in the English language. They had owned and resided on the lot for more than twenty years, renting out one of the houses. It appears the property was incumbered by two mortgages, one to Reed for $2,000 and the other to Rowell for $200. These mortgages and the interest thereon and the unpaid taxes, amounted to about $2,600. In February, 1890, Sleek

went to the plaintiffs and represented that he had eastern money to loan, and proposed to procure a loan for them sufficient to pay off the incumbrances. They agreed to take a loan of $2,700 for five years. Sleek testified that he was unable to procure a loan on the property, and that Goetz finally told him to sell it and that he did sell it to Flanders for $2,700.

The plaintiff testified in the most positive terms that they never gave Sleek any authority to sell the property and supposed all the time they were obtaining a loan and had executed a deed of trust to secure the same. Mr. Goetz went to Sleek's office on the evening of the twenty-third of April, 1890. He says Sleek then produced a paper saying it was a deed of trust, that he signed it at the place pointed out by Sleek. It appears Goetz had, on a former occasion, executed a mortgage on the lot to secure $75 due to Mr. Johnson, and Sleek spoke of this mortgage. Goetz said he had paid it off. The two then went to the office of Johnson who agreed to satisfy the mortgage on the next day. Mr. Johnson testified that Sleek then said he was making a loan to Goetz. This was after Goetz had signed the instrument but on the same day. Goetz left the city on the next day, leaving it to his wife to close up the transaction. In one or two days thereafter she signed the deed, and Sleek at a later date delivered it to the defendant Flanders. Sleek did not read the deed to either of the grantors but said to both of them it was a deed of trust. They had been to see him repeatedly about the loan. As soon as Flanders got the deed he demanded rents of the tenants in one of the houses, and in this way Mrs. Goetz received information that Flanders claimed to have purchased the property.

She and her son by a former marriage went to Sleek's office. As to that conversation the son testified: "I asked Mr. Sleek about the matter, if he was

not to loan money to my mother and step-father to pay
off what they had on the property. Sleek said, 'Yes.'
I asked him why he did not pay it off and not let them
bother my mother. He said they had all been paid.
I said, 'You have not paid Mr. Reed.' He said, 'Yes,.
he was paid last night.' I said, 'This don't look like·
it,' and pulled out the letter from Mr. Reed and showed
it to him. He replied that, 'If Mr. Reed was not paid.
last night, he was this morning.' My mother insisted
on seeing the paper she had signed. She asked him
what Dr. Flanders had to do with it. He said Dr.
Flanders furnished the money. She told him she·
wanted nothing to· do with Dr. Flanders. Sleek said.
Flanders was only joking.''

Mr. McWain saw Sleek, at the request of Mrs.
Goetz, in the forenoon of the third of May, 1890. He·
inquired about the incumbrances on the property and
Sleek said Flanders was the man to pay them. Being·
asked what kind of a deed Flanders had, he said it was
a conditional deed, in effect a mortgage. It appears·
Flanders paid Sleek $85, which Sleek says represented
money he had advanced Mr. and Mrs.. Goetz and $10
for an abstract. They say he advanced them $25 only.

Flanders testified that Sleek offered him the prop-
erty at $3,000; that he refused to pay that price, but
agreed to pay $2,700; that the incumbrances amounted
to $2,698.54 and that he paid Sleek in cash $97.50, less.
$12.50 rents for one month, for that part of one house.
occupied by the plaintiffs.

The further evidence produced by the plaintiffs.
shows that Flanders resided within a few blocks of the·
plaintiffs, that he owned a lot adjoining the one in
question, that he had made repeated efforts to buy this.
lot of the plaintiffs, and had offered to carry the $2,000
debt for them. The plaintiffs did not like Flanders
and refused to have anything to do with him. Flanders,

and Sleek had known each other for ten or twelve years. The proof is to the effect that Sleek did not at any time inform the plaintiffs that he was getting a loan of, or was dealing with, Flanders. This he admits. On the evening of the third of May, 1890, Mr. McWain and Mr. Rowell saw Flanders, and had a conversation to the following effect: Flanders said he purchased the lot through Sleek and had paid Sleek $100 for his services. Flanders denies making this statement. He offered to pay the Rowell lien of $200 if Rowell would assign the mortgage. Rowell offered to accept the money and satisfy the mortgage, but declined to assign it to Flanders, who declined to pay, except upon an assignment, and thus the matter ended. At a subsequent date Flanders proposed to reconvey the property to plaintiffs if they would pay Sleek $100, but this they refused to do. The incumbrances on the lot remained unpaid when this suit was commenced. A number of witnesses testified as to the value of the property. They place it, at the date of this transaction, all the way from $2,500 to $8,000.

While there is a direct conflict between the evidence of Sleek and that of the plaintiffs, still the evidence of the plaintiffs is strengthened by the circumstances surrounding the transaction, all of which they relate at great length. Their evidence is also supported by the evidence of Johnson, McWain and the son of Mrs. Goetz. Sleek takes issue with all of these witnesses in many important circumstances. Taking the evidence all in all, there can be no doubt but the plaintiffs executed the deed supposing and believing it was a deed of trust to secure $2,700 and that sleek would pay off the incumbrances and account to them for the balance. The evidence satisfies us, as it did the trial court, that these people were induced to execute a deed,

absolute in form, instead of a deed of trust to secure a loan, by the fraud and deception of Sleek.

The next inquiry is whether the defendant Flanders was a party to the fraud. In following out this inquiry it is to be observed that Sleek's interest in the matter seems to have been something other than a desire to serve the plaintiffs, as appears from the following circumstances; He must have had some knowledge of the incumbrances on the property before he saw these people, for he went to their house with a view, he says, of procuring a loan for them. They knew nothing of him until he made his appearance there. He kept them running to his office about the proposed loan for two months, when it is evident he had and knew of no one who would make the loan. He at no time mentioned to the plaintiffs the name of Flanders, and the fair inference is that he knew they would not deal with Flanders. These circumstances point to the conclusion that he had something in view besides getting a loan for the plaintiffs.

What, then, was his object? In reaching an answer to this question the evidence discloses these circumstances: Flanders had endeavored, but failed, to get the lot, and it was after this failure that Sleek appeared as a negotiator for the plaintiffs. Sleek made no effort to sell the property to any one other than Flanders. This is evident from his own testimony. When Flanders was informed of the fraud, he refused to reconvey, unless the plaintiffs would pay Sleek $100. Why this solicitude for Sleek? The consideration for the deed was, according to Sleek's evidence, the discharge of the incumbrances on the property. The fact that Flanders demanded an assignment of the Rowell incumbrance, when it was his duty to pay it off, shows that he felt his title was not a safe one. Taking all these circumstances together, there is evi-

dence from which the inference can be fairly drawn that Sleek was acting for, and as agent of, Flanders from the very outset. The trial judge so found, with all the parties before him, and we see no reason for saying there is error in that finding. The judgment is, therefore, affirmed. All concur.